# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MAIDS ON CALL, LLC, a Connecticut limited liability company, MAIDS ON CALL II, LLC, a Massachusetts limited liability company, TIMOTHY SCUSSEL, an individual, MARYANN SCUSSEL, an individual, SARA ROCK, an individual, and STACEY GARON, an individual, | Civil Action No.: 8:17-cv-00252 |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY RELIEF RE THE DUTY TO DEFEND** |
| v. | |
| OHIO SECURITY INSURANCE COMANY, a New Hampshire corporation, | |
| Defendant, | |

This is an insurance coverage suit seeking to establish that Defendant Ohio Security Insurance Company ("Ohio Security") has a duty to defend and pay the defense costs of Plaintiffs Maids on Call, LLC, Maids on Call II, LLC, Timothy Scussel, Maryann Scussel, Sara Rock, and Stacey Garon (collectively, "Plaintiffs" or "Maids on Call") in the underlying litigation styled as *The Maid International, Inc. v. Maids on Call, LLC, et al.*, (the "*Maid International Suit*"), filed on June 16, 2017 in the United States District Court for the District of Nebraska, and that Ohio Security reimburse Maids on Call for all defense costs incurred in that suit.

## THE PARTIES

1. Plaintiff Maids on Call, LLC is a Connecticut limited liability company that has its principal place of business located at Hartford, Connecticut.

2. Plaintiff Maids on Call II, LLC is a Massachusetts limited liability company that has its principal place of business located at West Springfield, Massachusetts.

3. Plaintiff Timothy Scussel is a resident of the state of Connecticut who resides and is domiciled in the City of Suffield, which is in the County of Hartford, and is a member of Maids on Call, LLC and Maids on Call II, LLC.

4. Plaintiff Maryann Scussel is a resident of the state of Connecticut who resides and is domiciled in the City of Suffield, which is in the County of Hartford, and is a member of Maids on Call, LLC and Maids on Call II, LLC.

5. Plaintiffs Timothy Scussel and Maryann Scussel are the only two members of Maids on Call, LLC and Maids on Call II, LLC.

6. Plaintiff Sara Rock is a resident of the state of Connecticut who resides and is domiciled in the City of Suffield, which is in the County of Hartford.

7. Plaintiff Stacey Garon is a resident of the state of Connecticut who resides and is domiciled in the city of Windsor Locks, which is in the County of Hartford. Stacey Garon was erroneously named as Stacey Scussel in the *Maid International Suit*.

8. Defendant Ohio Security is the insurance company organized and existing under the laws of the state of New Hamphire and with its principal place of business located at Boston, Massachusetts.

9. On information and belief, Defendant Ohio Security transacts business nationwide, including in the State of Nebraska.

## JURISDICTION

10. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that complete diversity exists between the parties.

11. Each of the individual Plaintiffs, Timothy Scussel, Maryann Scussel, Sara Rock, and Stacey Garon is domiciled in Connecticut and is a citizen of that state for purposes of diversity jurisdiction.

12. The citizenship of Plaintiffs Maids on Call, LLC and Maids on Call II, LLC is determined by the citizenship of their respective members. The only two members of Maids on Call, LLC and Maids on Call II, LLC are Plaintiffs Timothy Scussel and Maryann Scussel, both of whom are citizens of Connecticut. Thus, Plaintiffs Maids on Call, LLC and Maids on Call II, LLC are citizens of Connecticut for purposes of diversity jurisdiction.

13. Defendant Ohio Security is a dual citizen of New Hampshire, the state in which it is incorporated, and Massachusetts, the state in which it has its principal place of business.

14. The amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and in addition to other and further relief, declaratory relief is sought.

## VENUE AND APPLICABLE LAW

15. Venue is proper in the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1391(b).

16. Venue is proper in this District because a substantial part of the events or

omissions giving rise to the claims alleged herein occurred in this District.

17. Venue is proper in this District because the underlying action, the *Maid International Suit*, has been filed in this District. The Claimant, The Maids International, Inc. ("TMI"), resides in this District, and alleges that Maids on Call has done business in Nebraska. Ohio Security would have sufficient contacts with the District of Nebraska to be subject to personal jurisdiction in this District.

18. Under the choice of law rules of Nebraska, specifically Nebraska's "most significant relationship" test, Nebraska law applies to the coverage issues in dispute here. The relevant factors point to Nebraska as the state that has the most significant relationship with the coverage issues in dispute, including, without limitation, because:

   a. The parties in the *Maid International Suit* and in this action are geographically dispersed in four different states, including Nebraska, Connecticut, Massachusetts, and New Hampshire.

   b. The Claimant in the *Maid International Suit* is a resident of Nebraska and has elected to sue Maids on Call for the injuries alleged in the TMI Complaint in federal court in Nebraska, including pursuant to contractual provisions by which certain of the Plaintiffs are alleged to have consented to personal jurisdiction in Nebraska [*see* **TMI Complaint ¶ 14**].

   c. Maids on Call seeks through this action to enforce Ohio Security's duty to pay for Maids on Call's defense costs in connection with the *Maid International Suit*, which is venued in federal court in Nebraska, and to reimburse Maids on Call for all defense costs incurred in that suit.

   d. This coverage dispute concerns whether the Claimant's alleged injuries trigger coverage under the Policy for "personal and advertising" injury based on implied disparagement and/or implied defamation.

   e. No other state has a more significant relationship to the coverage issues in dispute between the parties.

# THE OHIO SECURITY POLICY

19. Ohio Security sold Commercial General Liability Policy No. BKS56009071 to Maids on Call, with a policy term of March 3, 2016 through March 3, 2017 (the "Policy").

20. The Policy has a limit of $1,000,000 for each "occurrence" falling with the "personal and advertising injury" coverage and $2,000,000 in the aggregate.

21. The Policy's "personal and advertising injury" coverage has no self-insured retention or deductible.

22. The Policy includes the following coverage under Section II under offense (d) for "personal and advertising injury."

> **A. Coverages**
>
> **1. Business Liability**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.
>
> . . . .
>
> **F. Definitions**
>
> **1.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of the following offenses:
>
> **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

23. The Policy proves that Ohio Security will pay all of Maids on Call's defense costs for claims covered by the policy, subject to $1 million policy limits. Specifically, the Policy includes the following defense provision:

## SECTION II – LIABILITY

**A. Coverages**

**1. Business Liability**

a. We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

24. The Policy includes the following definitions:

**F. Definitions**

**1.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of the following offenses:

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

25. The Policy includes the following potentially applicable exclusions:

**B.1.** This insurance does not apply to:

. . . .

**p.** "Personal and advertising injury":

. . . .

**12.** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

26. Disparagement and defamation claims are not within the scope of the intellectual property exclusion. Covered claims for disparagement and defamation address distinct grounds for potential liability that are unrelated to the assertion of intellectual property rights and are not connected to liability for any intellectual property claim that might otherwise fall within the Policy's exclusion.

27.     The Policy provides as follows with respect to "Who Is An Insured":

> **1.** If you are designated in the Declaration as:
>
> . . . .
>
> > **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insured, but only with respect to their duties as your managers.
>
> . . . .
>
> **2.** Each of the following is also an insured:
>
> > **a.** Your . . . "employees", other than your . . . managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

28.     Under these provisions, each of the Plaintiffs is a named insured or defined insured under the Policy:

    a. Maids on Call, LLC and Maids on Call II, LLC are both named insured LLCs;

    b. Timothy Scussel and Maryann Scussel are members of Maids on Call, LLC and Maids on Call II, LLC; and

    c. Sara Rock and Stacey Scussel were both employees of Maids on Call, LLC and/or Maids on Call II, LLC.

### THE UNDERLYING *MAID INTERNATIONAL SUIT*

29.     The Maids International, Inc. ("TMI") filed suit against Maids on Call, LLC, Maids on Call II, LLC, Timothy Scussel, Maryann Scussel, Sara Rock, and Stacey Garon styled *The Maid International, Inc. v. Maids on Call, LLC, et al.*, No. 8:17-cv-00208, on June 16, 2017 in the United States District Court for the District of Nebraska (the "*Maid International Suit*"). A copy of the complaint in the *Maid International Suit* is attached as **Exhibit "1"** (hereafter the

"TMI Complaint").

30. The TMI Complaint alleges infringement of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), breach of franchise agreement and personal guaranty, tortious inference with contracts and business services, and civil conspiracy, in connection with Plaintiffs' businesses providing residential cleaning services in Connecticut and Massachusetts.

31. The TMI Complaint alleges the following tortious actions by Maids on Call:

> 52. Following the Scussel Defendants' abandonment of their The Maids® franchises, TMI learned that the Scussel Defendants and the Scussel Daughters are operating a competing residential cleaning and household maintenance business under the name "Two Sisters Cleaning Services" ("Two Sisters") at the exact two locations in Hartford, Connecticut and West Springfield, Massachusetts where the Scussel Defendants operated their The Maids® franchised businesses. The Scussel Defendants' attorney has advised TMI that Two Sisters is owned and operated by the Scussel Daughters. As part of their competing business, Defendants have **converted, or have attempted to convert**, all of the Scussel Defendants' former The Maids® customers to their Two Sisters business in violation of the Franchise Agreements and applicable law.
>
> . . . .
>
> 56. TMI has contacted several of The Maids® customers that the Scussel Defendants previously provided services to and confirmed that Two Sisters has solicited their business and requested that they change services from The Maids® to Two Sisters. At least one of those customers has advised TMI that the same team of employees that cleaned her home when she was having it cleaned by the The Maids® now cleans her home under the name Two Sisters.
>
> . . . .
>
> 107. The Scussel Daughters tortiously interfered with TMI's contractual relationship with the Scussel Defendants by conspiring with the Scussel Defendants to **establish a competing business**, using and displaying The Maids® Marks in connection 8:17-cv-00208 Doc # 1 Filed: 06/16/17 Page 24 of 29 - Page ID # 24 25 with that business, using TMI's confidential information, and **using customer contact information for the purpose soliciting [sic] customers** on behalf of Two Sisters.

> 108. The Scussel Daughters purposely conspired and constructed their competitive business operation with the intent to evade the Scussel Defendants' obligations under the Franchise Agreements, including the obligation to refrain from **diverting or attempting to divert customers** to a competitor, and/or operating a directly competitive business after termination of the Franchise Agreements.
>
> 109. The Scussel Daughters also tortiously interfered with TMI's customer contracts and business relationships by **soliciting TMI's customers and convincing them to cancel their service with TMI** and sign up for services by Two Sisters Cleaning. (emphasis added)

32. TMI recently, on June 30, 2017, filed a Motion for Preliminary Injunction that seeks, among other relief, to potentially "prohibit Defendants . . . from operating their competing business . . . ," and thus Maids on Call is in immediate need of a defense.

## PLAINTIFFS' NOTICE TO OHIO SECURITY

33. Maids on Call provided notice of the *Maid International Suit* to Ohio Security on June 30, 2017 through an email sent by its attorneys to Ohio Security's claims department. Maids on Call provided Ohio Security with a copy of the TMI Complaint with the notice. A copy of the email to Ohio Security is attached as **Exhibit "2."**

34. On July 10, 2017, Maids on Call's counsel communicated with Ohio Security's claims department about the *Maid International Suit* and Maids on Call's demand for coverage.

35. On July 10, 2017, Ohio Security's claims representative sent a letter to Maids on Call, attached as **Exhibit "3,"** stating that:

> Ohio Security Insurance Company and The Ohio Casualty Insurance Company ("The Company(s)") are not in a position to either accept or reject this suit. We are currently investigating this suit under a strict reservation of rights.

36. By letter dated July 10, 2017, counsel to Maids on Call notified Ohio Security about its duty to defend. A copy of the letter is attached as **Exhibit "4."**

## THE *MAID INTERNATIONAL SUIT* ALLEGES IMPLICIT DISPARAGEMENT AND DEFAMATION

37. The Policy provides coverage for "personal and advertising injury" "arising out of . . . [o]ral or written publication, in any manner, of material that slanders or libels a person or organizing or disparages a person's or organization's goods, products or services." [**Sections II.A.1, F.1.d**].

38. "Publication" is explicitly alleged in the TMI Complaint because Plaintiffs are alleged to have improperly contacted and solicited customers for the purpose of diverting them to a competing business [*e.g.*, **TMI Complaint ¶¶ 52, 56, 107-109;** *see also* **Ex. 4 at 7-8**].

39. The TMI Complaint includes count VI for tortious interference, which alleges that Plaintiffs conspired to operate a competing business that harmed TMI by, among other things, "diverting or attempting to divert customers to a competitor," "using customer contact information for the purpose soliciting [sic] customers," and "soliciting TMI's customers and convincing them to cancel service with TMI" [**TMI Complaint ¶¶ 107-109**].

40. As alleged in the tortious interference count of the TMI Complaint, TMI's "injury" "arises out of" implied disparagement and/or defamation, where TMI was allegedly "injured" as a result of the Plaintiffs' alleged efforts to improperly solicit and divert customers, including by "convincing them to cancel their service with TMI," which allegedly harmed TMI's relationships with customers and resulted in diversion of customers [*see* **TMI Complaint ¶¶ 107-109**].

41. "Disparage" in this context means, among other things, "to bring discredit or bring reproach upon by comparing with something inferior," or "a misleading comparison to a specific competing product," and also includes statements about a competitor or its products, goods, or services that suggest "equivalence," as well as "superiority," where they give rise to negative comparative inferences, as here.

42. "Defamation" includes "slander" and "libel" and includes negative or false statements that may cause reputational harm.

43. "Disparagement" and "defamation" are not limited to the factual assertion of any singular common law tort which might well fall within the ambit of the "disparagement" or "defamation" policy offense. The facts alleged need not be completely articulated.

44. Potential coverage is promised by the insurer and purchased by the insured for any suit raising potential liability for damages "arising out of . . . [o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparage a person's or organization's goods, products or services."

45. "Disparagement" is implicitly alleged in the *Maid International Suit*, by claiming that Plaintiffs improperly contacted and solicited customers in order to divert those customers to a competing service, including by:

> a. "[U]sing customer contact information for the purpose soliciting customers" [**Complaint ¶ 107**];
>
> b. "[D]iverting or attempting to divert customers to a competitor" [**Complaint ¶ 108**]; and
>
> c. "[S]oliciting TMI's customers and convincing them to cancel their service with TMI and sign up for services by Two Sisters Cleaning" [**Complaint ¶ 109**].

46. The TMI Complaint provides an example of allegedly improper conduct involving Plaintiffs' solicitation of customers:

> 56.   TMI has contacted several of The Maids® customers that the Scussel Defendants previously provided services to and confirmed that Two Sisters has solicited their business and requested that they change services from The Maids® to Two Sisters. At least one of those customers has advised TMI that the **same team of employees** that cleaned her home when she was having it cleaned by The Maids® now cleans her home under the name Two Sisters. (emphasis added)

47. The available record expands upon the TMI's Complaint allegations and includes a letter Plaintiff Timothy Scussel sent to customers in or around late 2016 (the "Retirement

Letter"), and which is within the scope of the TMI Complaint's allegations that Plaintiffs were alleged to be "diverting or attempting to divert customers to a competitor" [**TMI Complaint ¶ 108**]. A copy of the Retirement Letter is attached as "Exhibit 3" to Exhibit 4 hereto, Maids On Call's July 10, 2017 coverage letter to Ohio Security.

48. Assertions contained in the Retirement Letter that evidence for coverage purposes potentially disparaging statements to customers include that:

> a. the Scussel Sisters' new service would be able to "maintain the customer service" that customers were used to because they would keep "most everything . . . the same as [customers] know it today" [**Retirement Letter at 1**];
>
> b. the Scussel Sisters' new service would "have the same employees that [customers] may know cleaning your home" [**Retirement Letter at 1**];
>
> c. "The Maids may [or may not] start another franchise in the area" [**Retirement Letter at 1**]; and
>
> d. Plaintiffs hoped that customers "have been happy with our service and will remain with us" [**Retirement Letter at 1**].

49. The Retirement Letter attempts to persuade residential cleaning customers that they should "remain with" Plaintiffs because only they could provide the continuity of service and personnel demanded by such customers. It is reasonable to infer that the statements in the Retirement Letter would cause existing customers to view the Scussel Sisters' new service as a preferred provider of residential cleaning services, and that negative comparative inferences would be drawn from the Retirement Letter which were allegedly used in "soliciting TMI's customers and convincing them to cancel their service with TMI and sign up for services by Two Sisters Cleaning" [**TMI Complaint ¶ 109**] that may have evidenced implied disparagement for purposes of establishing coverage.

50. "Defamation" is implicitly alleged in the *Maid International Suit*, by claiming that Plaintiffs "actively solicit[ed] existing" customers and attempted to improperly "divert" them to

a new service [**TMI Complaint ¶¶ 107-09**], damaging TMI's reputation in the process [**TMI Complaint ¶¶ 109, 121;** *see also* **Ex. 4 at 14-16**].

51. The TMI Complaint's allegations also imply that Plaintiffs solicited customers in order to induce them to cease their business with TMI and transfer it to Plaintiffs, and to usurp TMI's business relationships with its customers for the purpose of expanding Plaintiffs' business at the expense of TMI. Under these allegations, customers used the services of Plaintiffs, rather than TMI, due to a perception that the alternative is a better value, and may have been upset by TMI's attempts to disrupt their relationships with Plaintiffs. The reasonable inferences supporting a potential defamation claim on these facts include that TMI did not understand the nature of this business, did not have the resources to deliver adequate levels of service, and was otherwise insensitive to the needs of the customers.

52. The allegations of the *Maid International Suit* show that Plaintiffs allegedly attacked customers' perception of the value of TMI's services by having a negative comparative inference. It is enough to establish coverage for the allegations to support the reasonable inference that Plaintiffs' actions were aimed at detracting from the reputation of TMI and its services.

53. Even if the TMI Complaint did not include substantive detail, it is to be expected for complaints filed in federal court, which depend on discovery to develop factual support for the asserted claims. Specific factual allegations sufficient to support disparagement and/or defamation causes of action as pled are not required to establish coverage under the Policy.

54. The *Maid International Suit* factually alleges potential disparagement and/or defamation claims; therefore Ohio Security cannot avoid its defense obligation.

**THE IP EXCLUSION DOES NOT BAR A DEFENSE**

55. The Policy exclusion states (**Section II.B.1.p.12**):

  **B.1.**  This insurance does not apply to:

    . . . .

      **p.**      "Personal and advertising injury":

      . . . .

      **12.**      Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

56. The *Maid International Suit* alleges trademark infringement claims.

57. The predicate facts that evidence potential coverage must define the parameter of the scope of any application of the intellectual property exclusion.

58. Before determining whether the intellectual property exclusion bars a defense it must be determined whether the underlying complaint states facts that potentially fall within the scope of the policy's coverage.

59. Exclusionary clauses are liberally construed in favor of insureds, and thus the phrase "injury arising out of," while broadly construed in an insuring provision, must be narrowly construed against the insurer when used in an exclusion.

60. The TMI Complaint alleges that Plaintiffs improperly contacted and solicited customers for the purpose of diverting them to a competing business, thereby damaging TMI, including its reputation, in the process [e.g., **TMI Complaint ¶¶ 109, 121**].

61. The intellectual property exclusion does not apply to the tortious potential disparagement and defamation claims because the allegations bear no relation to the assertion of intellectual property rights.

62. Ohio Security cannot meet its burden of proving this exclusion applies to implicit disparagement and/or defamation allegations.

## FIRST CAUSE OF ACTION

## Declaratory Relief -- Duty to Defend

63. Maids on Call, by this reference, incorporates each and every allegation set forth in the above paragraphs of this Complaint as though fully alleged herein.

64. By issuing and delivering the Policy, Ohio Security agreed to provide a defense

for suits alleging damages for publications that disparage TMI's services or defame TMI, even if the allegations are groundless, false, or fraudulent. Ohio Security agreed to pay for Maids on Call's defense costs in such suits.

65. Ohio Security is obligated under the Policy to pay attorneys' fees and costs incurred in the defense of the *Maid International Suit*. Ohio Security breached its duty to Maids on Call by failing to provide and pay for a defense in the *Maid International Suit*.

66. Maids on Call has fully performed all of the obligations and conditions to be performed by it under the Policy and/or has been excused from performing the same as a result of Ohio Security's breach of its duty to defend.

67. An actual bona fide controversy exists between Maids on Call, on the one hand, and Ohio Security, on the other hand, that requires judicial declaration by this Court of the parties' rights and duties. Namely, the parties disagree about whether Ohio Security has a duty to defend Maids on Call in the *Maid International Suit* and to pay all of the attorneys' fees and costs it has incurred and will incur to defend that lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant Ohio Security as follows:

1. That the Court issue judgment declaring:
    a. Ohio Security had and has a duty to defend Maids on Call (and to pay its defense costs) under the Policy it issued to Maids on Call against the claims asserted in the *Maid International Suit*;
    b. Ohio Security must promptly pay to Maids on Call all attorney's fees and costs incurred by Maids on Call in defense of the claims asserted in the *Maid International Suit*
2. That the Court issue judgment for:
    a. Maids on Call in this action plus interest on said fees at the highest rate allowed by law from the date of entry of judgment until paid in full;

    b.    For total costs of the suit herein; and

    c.    For such other and further relief as the Court may deem just and proper.

Dated: July 12, 2017

Respectfully submitted,

By: s/ David A. Gauntlett

David A. Gauntlett
Eric D. Mason
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, CA 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050
info@gauntlettlaw.com
edm@gauntlettlaw.com

Attorneys for Plaintiffs,
MAIDS ON CALL, LLC, MAIDS ON CALL II, LLC, TIMOTHY SCUSSEL, MARYANN SCUSSEL, SARA ROCK, and STACEY GARON

## CERTIFICATE OF SERVICE

**I hereby certify** that on July 12, 2017, I electronically filed the foregoing document with the Clerk of this Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

Dated: July 12, 2017

Respectfully submitted,

By: s/ David A. Gauntlett

David A. Gauntlett
Eric D. Mason
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, CA 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050
info@gauntlettlaw.com
edm@gauntlettlaw.com

Attorneys for Plaintiffs,
MAIDS ON CALL, LLC, MAIDS ON CALL II, LLC, TIMOTHY SCUSSEL, MARYANN SCUSSEL, SARA ROCK, and STACEY GARON