# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MAIDS ON CALL, LLC, a Connecticut limited liability company; MAIDS ON CALL II, LLC, a Massachusetts limited liability company; TIMOTHY SCUSSEL, an individual; MARYANN SCUSSEL, an individual; SARA ROCK, an individual; and STACEY GARON, an individual;<br><br>    Plaintiffs,<br><br>vs.<br><br>OHIO SECURITY INSURANCE COMPANY, a New Hampshire corporation;<br><br>    Defendant,<br><br>OHIO CASUALTY INSURANCE COMPANY,<br><br>    Intervenor. | 8:17CV252<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment, ECF No. 11, and the Motions for Summary Judgment filed by Defendant Ohio Security Insurance Company (Ohio Security) and Intervenor Ohio Casualty Insurance Company (Ohio Casualty) (collectively "Ohio"), ECF Nos. 31 and 36, respectively. Also before the Court is the Objection to Supplemental Authority, ECF No. 44, filed by Ohio Security. For the reasons stated, Ohio Security and Ohio Casualty's Motions for Summary Judgment will be granted, Plaintiffs' Motion will be denied, and the Objection will be denied as moot.

## BACKGROUND

Unless otherwise indicated, the following facts are those stated in the Parties' briefs, supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1 and Federal Rule of Civil Procedure 56.

### The Parties

Maids on Call, LLC, is a Connecticut limited liability company that has its principal place of business in Hartford, Connecticut. Maids on Call II, LLC, is a Massachusetts limited liability company that has its principal place of business in West Springfield, Massachusetts. Timothy and Maryann Scussel are residents of Connecticut and the owners and only members of Maids on Call, LLC, and Maids on Call II, LLC (the "former Maids franchises"). Stacey Garon and Sara Rock are also residents of Connecticut. Rock and Garon were employees of the former Maids franchises.

Ohio Security is an insurance company organized and existing under the laws of the state of New Hampshire and with its principal place of business in Boston, Massachusetts. Ohio Security transacts business nationwide, including in the state of Nebraska. Ohio Security is the named insurer on Policy No. BKS56009071 (the "Policy"), issued to Maids on Call, LLC, and Maids on Call II, LLC, covering the policy period of March 3, 2016, to March 3, 2017. The parties dispute whether the former Maids franchises renewed the Policy for the period March 3, 2017, to March 3, 2018. Each of the Plaintiffs was either a named insured or a defined insured under the Policy.

Ohio Casualty is an underwriting company that issued a commercial umbrella insurance policy (the "Ohio Casualty Policy") to Maids on Call with language similar to the Policy at issue in this case. *See* Order at 2, ECF No. 34, Page ID 1985. The Court

granted Ohio Casualty leave to intervene under Federal Rule of Civil Procedure 24(b)(1)(B) because the claims of Ohio Casualty and Ohio Security against the Plaintiffs share common questions of law and fact, and the relief Ohio Casualty seeks is premised on legal theories identical to those asserted by Ohio Security. *See id.* at 3, Page ID 1986.

## Policy Terms

The Policy's Insuring Agreement under Coverage B – Personal and Advertising Injury Liability provided as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have that right and duty to defend the insured against any "suit" seeking those damages.

Pls.' Ex. 11 at 4-5; ECF No. 12-11, Page ID 484-85. The Policy also contained the following exclusions:

> This insurance does not apply to:
>
> **a. Knowing Violation of Rights of Another**
>
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."
>
> **b. Material Published With Knowledge Of Falsity**
>
> "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.
>
> …
>
> **f. Breach of Contract**
>
> "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

3

…

**i. Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactic to mislead another's potential customers.

*Id.* at 5-6; ECF No. 12-11, Page ID 485-86.

The Policy provided the following regarding who was insured by the Policy:

1. If you are designated in the Declarations as [ . . . ]

d. An organization other than a partnership, joint venture or limited liability company, you are an insured.

Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business[.]

*Id.* at 7; ECF No. 12-11, Page ID 487.

**The TMI Lawsuit**

On June 16, 2017, the Claimant, The Maids International, Inc. (TMI) filed its Complaint against Maids on Call (the TMI Complaint) in this Court, in the action captioned *The Maids International, Inc. v. Maids on Call, LLC, et al.*, Case No. 8:17-cv-00208 (the "TMI Lawsuit"). TMI filed the lawsuit in Nebraska based on the forum-selection clauses in its franchise agreements with Maids on Call, LLC, Maids on Call II, LLC, Timothy Scussel, and Maryann Scussel (the "Scussel Defendants").

TMI alleged that the individual defendants, who were principals and employees of a TMI franchise, abandoned their franchise operations and began operating a new business in the same location as their old one, using the same customer list. TMI further alleged that Maids on Call was using TMI's trademarks and email address in the operation of a competing business, in violation of the franchise agreements and federal trademark law. The TMI Complaint alleged that the Scussel Defendants conspired to operate Two Sisters Cleaning ("Two Sisters") and harmed TMI by, among other things, "diverting or attempting to divert customers to a competitor," "using customer contact information for the purpose soliciting [sic] customers," and "soliciting TMI's customers and convincing them to cancel service with TMI and sign up for services by Two Sisters Cleaning," resulting in diversion of customers and damage to TMI's reputation. Pls.' Ex. 1 ¶¶ 52, 56, 106-09, 121; ECF No. 12-1, Page ID 173, 174, 183-84, 185.

On June 30, 2017, TMI filed a Motion for Preliminary Injunction in the TMI Lawsuit, along with a two-volume Index of Evidence and a Brief in Support of the Motion. TMI's preliminary injunction motion sought an order "prohibiting Defendants from operating their competing Two Sisters cleaning business," and argued that the

Scussel Defendants "have already poached TMI's customers" and were "stealing the goodwill and relationship The Maids customers have with the franchise system." ECF Nos. 12-2, 12-3, 12-4. Also on June 30, 2017, Plaintiffs' counsel notified Ohio Security of the TMI Lawsuit and requested an immediate defense of the lawsuit. On July 10, 2017, Plaintiffs' counsel sent a letter to Ohio Security explaining why Plaintiffs contended that Ohio Security owed Plaintiffs a defense in the TMI Lawsuit.

On July 24, 2017, Maids on Call filed its Brief in Opposition to TMI's Motion for Preliminary Injunction, accompanied by an Index of Evidence (the "Opposition Index"). *See* ECF No. 12-5. On July 31, 2017, TMI filed its Reply Brief in support of its Motion for Preliminary Injunction, accompanied by a Supplemental Index of Evidence. TMI's Reply Brief emphasized the importance of a "Retirement Letter," and communications between the Scussel Defendants and customers after the Retirement Letter was sent, causing harm to TMI. TMI argued that "[c]learly, Two Sisters obtained these customers because of Mr. Scussel's solicitation letter." and "[Two Sisters] have stolen customers away from TMI and The Maids system, and are pirating TMI's goodwill." ECF No. 12-7.

On July 31, 2017, Ohio Security served a letter denying coverage for the TMI Lawsuit.

**STANDARD OF REVIEW**

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty.*

*of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643

F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION

### Choice of Law

The parties disagree as to whether this action is governed by Nebraska or Connecticut law. Because the Court's subject matter jurisdiction is based on diversity, and the Ohio Security Policy does not contain a choice-of-law provision, this Court applies the choice-of-law rules of Nebraska to determine which law applies. *See Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 595 (8th Cir. 2007). "In answering any choice-of-law question, the court first asks whether there is any real conflict between the laws of the states." *Yoder v. Cotton*, 758 N.W.2d 630, 635 (Neb. 2008). The parties agree that there is no conflict between Nebraska and Connecticut law and Plaintiffs rely on cases from several jurisdictions outside Nebraska and Connecticut to support their position. The Court's review of the law of both states

8

demonstrates that there is no significant conflict between relevant Connecticut and Nebraska law. Accordingly, the Court need not perform a choice-of-law analysis.

## Coverage Under the Policy

A duty to defend arises "when the complaint states facts that bring the injury within the policy coverage." *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 773 A.2d 906, 915 (Conn. 2001); *see also Peterson v. Ohio Cas. Group*, 724 N.W.2d 765, 773 (Neb. 2006) (stating that an insurer "bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy"). For the duty to arise, the allegations in the underlying action must fall within the scope of coverage provided by the policy at issue. *Id.* In addition to considering express allegations in the complaint, an insurer must defend where "a reasonable investigation of the actual facts by the insurer would or does disclose facts that would obligate the insurer to indemnify." *Peterson*, 724 N.W.2d at 773-74; *Hartford Casualty Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 876 A.2d 1139, 1146 (Conn. 2005) (holding that the insurer is required to "provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage"). Maids on Call bears the burden of demonstrating that the TMI suit gave rise to potential liability under the Policy. *See QSP*, 773 A.2d at 916; *Williams Steel, Inc. v. Continental Cas. Co.*, 883 N.W.2d 60, 65 (Neb. 2016).

In claiming Ohio Security had a duty to defend in the TMI lawsuit, Maids on Call relies solely on the "personal and advertising injury" coverage in the Policy. The personal and advertising injury coverage applies to seven offenses specifically defined in the Policies. Plaintiffs seek coverage under one of those seven offenses: injury arising out of "[o]ral or written publication, in any manner, of material that slanders or

9

libels a person or organization or disparages a person's or organization's goods, products or services." Pls.' Ex. 11 at 6; ECF No. 12-11, Page ID 486; ECF No. 13, Page ID 527. Thus, to fall within the scope of the coverage, Plaintiffs must show that (1) the fundamental elements of libel or slander were expressly alleged, or (2) that a reasonable investigation of the facts would show that Ohio had a duty to defend. *See Peterson*, 724 N.W.2d at 773-74; *Hartford Casualty*, 876 A.2d at 1146.

### 1. Express Language of the TMI Complaint

Slander, libel, and disparagement are each "a species of defamation." *QSP*, 773 A.2d at 916-18; *see also Moats v. Republican Party of Nebraska*, 796 N.W.2d 584, 594 (Neb. 2011). To prove defamation, a plaintiff must show "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Moats*, 796 N.W.2d at 593; *see also QSP*, 773 A.2d at 916. "Where a plaintiff cannot prove a fundamental element of the underlying tort, *e.g.*, defamation, a claim for personal injury coverage will be denied." *QSP*, 773 A.2d at 916; *see also Reliance Ins. Co. v. Newton*, 81 F.3d 789, 792 (8th Cir. 1996) (stating that where underlying plaintiff had not pled facts stating a claim for defamation, no defamation offense was alleged for insurance purposes).

TMI did not expressly allege that Plaintiffs made false or defamatory statements. TMI alleged that, in breach of the franchise and other agreements with TMI, and in breach of other alleged duties, Maids on Call "conspired to operate a competing residential maintenance and cleaning service business under the name 'Two Sisters

10

Cleaning Services.'" TMI Compl. ¶ 1, ECF No. 33-2. TMI alleged that the Scussel Defendants, who were former principals and employees of a TMI franchise, abandoned their franchised operations, "pirated TMI's goodwill," and began operating a new business in the same location as their old one using the same customer list. *Id.* ¶¶ 1, 52-56. TMI further alleged that Maids on Call was "using TMI's trademarks and email address in the operation of their competing business in violation of the Franchise Agreements and federal trademark law." *Id.* ¶¶ 1, 57-63. TMI thus alleged breach of contract, trademark infringement, false designation of origin and unfair competition under the Lanham Act, tortious interference with contract, and civil conspiracy. *Id.* ¶¶ 64-122. None of these claims expressly alleges the elements of defamation, libel, slander, or any similar action, nor could any of the claims in the TMI complaint be interpreted to allege that Maids on Call or any Plaintiff published a defamatory, false statement to a third party.[1] Because TMI did not plead facts stating a claim for

---

[1] Plaintiffs suggest that TMI need not have alleged that Plaintiffs made a false or defamatory statement. However, the highest courts of Nebraska and Connecticut, as well as the vast majority of courts to address the issue, have concluded that coverage on the basis of disparagement/defamation requires a false statement published to a third party, harming the underlying claimant. *QSP*, 773 A.2d at 918 ("[T]he torts of trade libel and commercial disparagement, like defamation, require that [an] alleged damaging statement be made concerning the plaintiff."); *Moats*, 796 N.W.2d at 594 (publication of a false statement to another is an element of defamation). *See also Norton v. Kanouff*, 86 N.W.2d 72, 74 (Neb. 1957) (stating that in general, claim for disparagement of property rights is based upon a "false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, resulting in special damage"); *Reliance Ins. Co. v. Newton*, 81 F.3d 789, 792 (8th Cir. 1996) (where underlying plaintiff had not pled facts stating a claim for defamation, no defamation offense was alleged for insurance purposes); *Crisp Enterprises Inc. v. Golden Eagle Ins. Co.*, 698 F. App'x 910 (9th Cir. 2017) (holding that to create a duty to defend, the insured "must be able to point to a false or misleading statement"); *S. Bertram, Inc. v. Citizens Ins. Co. of Am.*, 657 F. App'x 477, 481 (6th Cir. 2016) ("[A] disparagement claim requires a company to make false, derogatory, or disparaging communications."); *Bullpen Distribution, Inc. v. Sentinel Ins. Co.*, 584 F. App'x 769, 771 (9th Cir. 2014) (insurer did not have a duty to defend claim that did not allege insured "directly cast aspersions" on underlying claimant, as required by the defamation tort); *Novell, Inc. v. Vigilant Ins. Co.*, 421 F. App'x 872, 875 (10th Cir. 2011) (where no express defamatory statement was pled, no coverage for defamation); *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813, 820 (7th Cir. 2008) (facts in underlying complaints were "simply insufficient to sketch a claim for the common-law offenses of libel, slander, or disparagement"); *Great Am. Ins. Co. v. Riso, Inc.*, 479 F.3d 158, 161 (1st Cir. 2007) (looking to elements of common-law torts and concluding that express disparagement is required); *Elite*

defamation, the language of the complaint in the TMI action did not trigger coverage under the Policy.

### *2. Implied Cause of Action for Disparagement*

Plaintiffs argue that even if the TMI complaint did not explicitly allege the elements of defamation, they are entitled to coverage under the theory of "implied" or "implicit" disparagement. As noted above, an insurer must defend where a reasonable investigation of facts outside the complaint would reveal the possibility of coverage. *See Peterson*, 724 N.W.2d at 773-74; *Hartford Casualty*, 876 A.2d at 1146. Plaintiffs argue that implicit disparagement arises where allegations are made concerning "statements about a competitor or its products, goods, or services that suggest 'equivalence,' as well as 'superiority,' where they give rise to negative comparative inferences." Pl. Br. at 24, ECF No. 13, Page ID 532 (citing *JAR Labs., LLC v. Great Am. E&S Ins. Co.*, 945 F. Supp. 2d 937, 944 (N.D. Ill. 2013)). Plaintiffs assert that a claim for implicit disparagement under California law has two elements: "A false or misleading statement (1) must specifically refer to the plaintiff's product or business, and (2) must clearly derogate that product or business." *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 326 P.3d 253, 261 (Cal. 2008). These elements may be satisfied "by express mention or by clear implication." *Id.*

Plaintiffs argue that both elements were satisfied in Timothy Scussel's December 2016, letter (the "Retirement Letter") to customers of the former Maids franchises. The Retirement Letter informed the former customers that Scussel was retiring from the

---

*Brands, Inc. v. Penn. Gen. Ins. Co.*, 164 F. App'x 60, 62 (2d Cir. 2006) (disparagement claim must contain "specific assertions of unfavorable facts reflecting upon the rival product").

residential cleaning business, and announced that Rock and Garon were establishing Two Sisters Cleaning Service that would not be associated with The Maids. The letter also stated that Rock and Garon were "ready to take over. (They really have been running the business for many years)." ECF No. 12-6, Page ID 456. The Retirement Letter described how Two Sisters intended to continue the services formerly provided under The Maids franchise:

> With the company that they are starting (TWO SISTER [sic] CLEANING SERVICE) most everything will be the same as you know it today. *We* will have the same employees that you may know cleaning your home, using the same products to clean your home, the same cleaning schedule, we have the same insurance, (workers comp, liability & bonding) that we currently have.
>
> Now, you have a choice to make. 1. Choose TWO SISTERS CLEANING SERVICE as your cleaning company, and everything remains the same as you know it today. 2. Choose another cleaning service, or 3. Which may or may not happen is The Maids may start another franchise in this area. Hopefully you have been happy with our service and will remain with us.
>
> I said that most everything will remain the same. There is one item that is going to change. Now this was going to change regardless of the start up of our new company or not. That item that is changing is our pricing. As many of you know the minimum wage is going up again beginning Jan. 1, 2017. In Massachusetts the minimum wage is going from the current $10.00 per hour to $11.00, and in Connecticut from the current $9.60 to $10.10. When the minimum wage goes up our workers comp, liability insurance and payroll tax all go up because they are all based upon our payroll. Our price increase is an average 2.7% per customer. For those of you that have been with us for many years know that we have not raised our price VEREY [sic] much over the years.

ECF No. 12-6, Page ID 456-57.

Even if Nebraska or Connecticut law were to recognize "implied disparagement" as a basis for coverage, Plaintiffs have failed to demonstrate that the Retirement Letter contained any actual or implied statement of disparagement. The statements in the

Retirement Letter were not defamatory or disparaging because they did not make a false statement about TMI, nor did they "clearly derogat[e] its business." *Swift*, 326 P.3d at 256. The Retirement Letter simply suggests that customers would receive the same high level of service with Two Sisters that they did with TMI.

The authorities Plaintiffs cite in support of their position demonstrate that coverage for implied disparagement is *not* present in this case. For example, in *Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*, 761 F. Supp. 2d 904 (N.D. Cal. 2011), *aff'd*, 495 F. App'x 830 (9th Cir. 2012), the court found that coverage was triggered where the insured's web advertisements misled consumers about the true origins and nature of products and were intended to "entice customers interested in [the plaintiff's] products into [the insured's] showrooms, where they would then be 'steered instead' to the imitation products." *Id*. at 911-12. Plaintiffs argue that, similar to the plaintiff in *Michael Taylor*, TMI's complaint implied that Timothy Scussel made statements intended to steer customers away from TMI. However, under the reasoning in *Michael Taylor*, steering customers away is insufficient on its own to trigger coverage for implied disparagement. The court in *Michael Taylor* distinguished the facts in that case from the allegations in *Aetna Cas. & Surety Co., Inc. v. Centennial Ins. Co.,* 838 F.2d 346 (9th Cir.1988). In *Aetna*, as in *Michael Taylor*, the defendant had been accused of trade dress infringement. However, the court in *Michael Taylor* recognized that

> in *Aetna* there were no allegations in the underlying complaint that the infringer was damaging the reputation of the plaintiff's goods by passing off copies of inferior quality. 838 F.2d at 352. Moreover, as described in *Aetna,* the "gravamen" of the underlying claims against the alleged infringers was "that they 'palmed off' [the plaintiffs'] products *as their own.*"

14

838 F.2d at 351 (emphasis added). Here, in stark contrast, [the underlying plaintiff's] original complaint made clear that her charge was that [the insured] was leading people to believe its "cheap synthetics" *were* [the insured's] own products.

*Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*, 761 F. Supp. 2d 904, 911 (N.D. Cal. 2011), *aff'd,* 495 F. App'x 830 (9th Cir. 2012); *see also Microtec Research, Inc. v. Nationwide Mut. Ins. Co.*, 40 F.3d 968, 972 (9th Cir. 1994) (holding that a complaint did not trigger coverage for trade disparagement, slander, or libel because there was no allegation of a false or injurious statement about the quality of the underlying plaintiff's product).

Here, TMI never alleged that Plaintiffs passed off inferior services as those of TMI, or that Plaintiffs made an injurious statement about the quality of TMI's work. The only specific reference to TMI was that it "may or may not" establish another business in the area. The Retirement Letter did not disparage TMI, nor did it steer TMI customers to Two Sisters on the false premise that an inferior service offered by Two Sisters was that of TMI.

## CONCLUSION

To demonstrate that Ohio had a duty to defend in the TMI action, Plaintiffs must establish that "the pleadings allege a covered occurrence." *QSP*, 773 A.2d at 914; *see also Allstate Ins. Co.*, 313 N.W.2d at 641. Here, the TMI complaint did not allege a covered occurrence, express or implied. Accordingly, Plaintiffs did not meet their burden of demonstrating that Ohio had a duty to defend.

IT IS ORDERED:

1. Plaintiffs' Motion for Partial Summary Judgment, ECF No. 11, is denied;

2. The Motions for Summary Judgment, ECF Nos. 31 and 36, filed by Defendant Ohio Security Insurance Company and Third Party Plaintiff Ohio Casualty Insurance Company, respectively, are granted;

3. The Objection to Supplemental Authority, ECF No. 44, is overruled as moot;

4. This case is dismissed, with prejudice; and

5. A separate judgment will be entered.

Dated this 2nd day of January, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge